IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| KEITH F. BELL, PH.D., | ) |
| | ) |
| Plaintiff, | ) CIVIL NO. A06-CA-692-SS |
| | ) |
| v. | ) MOTION OF DEFENDANT MARC |
| | ) BLOOM PURSUANT TO FED. R. CIV. |
| PATRICK L. TYSON, MARC BLOOM, | ) P. 12(c) FOR JUDGMENT ON THE |
| BREAKAWAY BOOKS, and | ) PLEADINGS |
| CONSORTIUM BOOK SALES & | ) |
| DISTRIBUTION, | ) |
| | ) |
| Defendants. | ) |

**FRITZ, BYRNE, HEAD & HARRISON, LLP**
Dale L. Roberts
98 San Jacinto Boulevard, Suite 2000
Austin, TX 78701
Telephone: (512) 322-4745
Facsimile: (512) 477-5267

**LINDQUIST & VENNUM P.L.L.P.**
Bruce H. Little, Minnesota Reg. #17421X
*(admitted pro hac vice)*
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2205
Telephone: (612) 371-3211
Facsimile: (612) 371-3207

**ATTORNEYS FOR DEFENDANT
MARC BLOOM**

Doc# 2460743\1

Defendant Marc Bloom ("Bloom") moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings dismissing the First Amended Complaint filed by Plaintiff Keith F. Bell ("Bell") and entering judgment in his favor on all counts. Bell is not entitled to relief under any set of facts or any possible theory provable consistent with the allegations he has pled, and therefore judgment on the pleadings must be granted in his favor.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 7(a) enumerates the permissible pleadings under the Federal Rules. For the purposes of this motion, the relevant pleadings are the First Amended Complaint[1]; the Answer of Defendant Bloom[2]; and the Answer of Defendant Patrick Tyson[3].

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are guided by decisions deciding motions under Fed. R. Civ. P. 12(b)(6), *Great Plains Trust Co. et al. v. Morgan Stanley Dean Witter & Co. et al.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002), and are designed to dispose of cases in which the material facts are not in dispute and a judgment on the merits may be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (*per curiam*). The central issue is whether, when construed in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Great Plains*, 313 F.3d at 312.

When considering a Rule 12(c) motion, the Court must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Id.* at 312. The Court is not required to accept as true conclusory allegations or unwarranted deductions of fact. *Id.* at 313.

---

[1] Docket No. 5-1.
[2] Docket No. 15.
[3] Docket No. 34.

The Court may take into account documents attached to the complaint and incorporated into the pleadings. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir.), *cert. denied* 525 U.S. 1041, 119 S.Ct. 591, 142 L.Ed.2d 534 (1998) The Court also may take into account the contents of documents referred to in the pleadings, even if those documents are not attached. *Great Plains*, 313 F.3d at 313-314. If it is clear that a plaintiff is not entitled to relief under any set of facts or any possible theory consistent with the allegations in his complaint, a motion for judgment on the pleadings should be granted. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (*per curiam*).

## BELL'S ALLEGATIONS AGAINST BLOOM

In the First Amended Complaint ("FAC"), filed November 15, 2006, Bell alleged copyright infringement, contributory infringement, and federal and common law unfair competition against Tyson, Bloom, publisher Breakaway Books, and distributor Consortium Book Sales & Distribution ("Consortium"). He also alleged breach of contract against Tyson. Breakaway Books and Consortium reached settlements pursuant to Fed. R. Civ. P. 68.[4]

Bell owns the copyright in a 68-page literary work, *Winning Isn't Normal*, published in 1982. (FAC ¶¶ 8-11) (FAC, Exhibit C)[5] In about 1990, Tyson obtained a copy of less than a page of *Winning Isn't Normal* ("the Excerpt") (FAC ¶ 10) and made an unauthorized copy ("the so-called Infringing Work"[6]) (FAC ¶ 16). In the spring of 2001, after Tyson had distributed copies of the Infringing Work for about ten years, Bell contacted him. (*Id.* ¶¶ 16-25).

In a letter dated April 27, 2001, Bell accused Tyson of copying "much of what appears on page 8 of 'Winning Isn't Normal' under the same title and repeatedly distributing it to

---

[4] Docket Nos. 28 and 29. The Rule 68 judgments are not "pleadings" as defined in Fed. R. Civ. P. 7(a).
[5] Docket No. 5-2, page 8.
[6] For the purposes of this motion only, Bloom adopts the terminology used by Bell. For example, Tyson's copy of less than one page of Bell's 68-page book is referred to as "the Infringing Work."

2

members of your High School teams, various coaches, and others." (FAC, Exhibit D, p. 10)[7] Bell proposed a settlement to Tyson that involved, at least in part, "some agreement as to how to remedy the harm caused by your past use of my work and by past and continuing use of my work by others to whom you have distributed it without permission and without proper attribution, and the harm caused by my work appearing on others' websites and being attributed to you." (*Id.*) Tyson responded on May 9, 2001, assuring Bell in a handwritten letter that he had destroyed all copies in his possession and no longer would copy or distribute the Excerpt. (FAC, Exhibit E, pp. 12-13)[8] Tyson did not, however, address Bell's concerns about the dissemination and continued use of the Infringing Work by third parties who had obtained it directly or indirectly from Tyson or its appearance on the websites of others. (*Id.*)

Bell now claims that, despite Tyson's inaction in response to most of his demands, he accepted as a settlement Tyson's offer to discontinue reproduction, display, and distribution of the Infringing Work. (FAC, ¶ 80) On that basis, he refrained from further legal action. (*Id.*) Bell was aware in 2001 of third party uses of the Infringing Work (FAC, Exhibit D), but in his lawsuit he asserts the existence of a contract, meaning that he accepted Tyson's proposal even though Tyson did not offer to take action to stop such uses.

Three years later, Breakaway published Bloom's memoir, titled *God on the Starting Line: The Triumph of a Catholic School Running Team and Its Jewish Coach* ("The Bloom Work"). (FAC, Exhibits F and G, pp. 16-17, 19-20)[9] The Bloom Work is a non-fiction account of the 2000 cross-country season at a New Jersey Roman Catholic high school. (Little Declaration, Exhibit 5, page 235) A copy of the Infringing Work is reprinted in the Bloom

---

[7] Docket No. 5-2.
[8] Docket No. 5-2.
[9] Docket No. 5-2.

3

Work, where it is described as "a letter [Tyson] distributes to his athletes." (FAC, Exhibit G, p. 19) Bloom does not explicitly attribute authorship of the Infringing Work to Tyson. (*Id.*)

Bell alleges that the single page where the Infringing Work is reproduced in the Bloom Work means that the Bloom Work infringes his copyright. (FAC ¶¶ 32, 52-55). He hypothesizes on information and belief that Tyson gave Bloom express authorization to reproduce and display the Infringing Work after May 9, 2001 – the date Tyson promised not to make or distribute further copies of the Excerpt. (*Id.*, ¶¶ 28, 32) Bell does not claim that any other portion of the Bloom Work is copied from his work. Although Bell claims that he wrote to Bloom about the infringement (Id. ¶ 35), his purported letter is not attached to the FAC, and Bloom denies receiving it. (Bloom Answer, ¶ 36).

Bell charges Bloom with direct copyright infringement and contributory infringement based on Consortium's distribution of the Bloom Work. Bell also alleges that Bloom engaged in unfair competition in violation of § 1125(a) of the Lanham Act and the common law by re-publishing Tyson's Infringing Work and attributing authorship of the "Winning Isn't Normal" passage to Tyson. (FAC, Count VI, ¶¶ 71, 76)

## BLOOM'S ANSWER AND DENIALS

Bloom denies copyright infringement and contributory infringement (Bloom Answer ¶¶ 29-42, 53-56, 64-65). He also relies on the affirmative defenses of waiver, *laches,* fair use, and innocent infringement. (*Id.* ¶¶ 92-95) Bloom affirmatively states that before May 9, 2001, Tyson gave him the Infringing Work as part of a high school "team book" and that Tyson placed no restrictions on Bloom's ability to re-use any of the material. (Bloom Answer, ¶¶ 29, 33)

Doc# 2460743\1

Bloom denies ever speaking to Tyson about Bell's claims or to Bell or anyone else who informed him of Bell's claims. (Bloom Answer, ¶ 33)[10]

## ARGUMENT

Bloom is entitled to judgment on the pleadings on all four counts asserted against him. Bell's claims for copyright infringement (Count II) and contributory infringement (Count V) are barred by the doctrine of "fair use" codified at 17 U.S.C § 107. The claim in Count VI fails because the Lanham Act cannot be extended to prohibit false claims of origin of inventive or communicative work. *See,* J. Thomas McCarthy, *McCarthy On Trademarks and Unfair Competition*, § 27:77.1 (4th ed. 2007). Count VII, the common law unfair competition claim, is preempted by 17 U.S.C § 301(a).

To enter judgment in favor of Bloom, the Court is not required to look further than the pleadings, including the documents attached to or referred to in the FAC. Bell is not entitled to relief under any set of facts or any possible theory consistent with his allegations. He should not be permitted to impose further upon the time and financial resources of Bloom or to burden the Court by offering evidence to support pleadings that on their face reveal that his case is futile.

### A. Copyright Infringement and Contributory Infringement (Counts II and V)

The Bloom Work is a non-fiction account of the 2000 cross-country season at the high school where Bloom served as coach. Both Bloom and Tyson admit that Tyson authorized Bloom to use or reproduce material from the Mead High School Cross Country "team book," a book that included the Infringing Work. (Tyson Answer ¶¶ 32-33; Bloom Answer ¶¶ 29, 33). Tyson's authorization occurred before Bell contacted Tyson in 2001. Bell was aware in 2001 that Tyson had permitted other coaches to use and reproduce the Infringing Work. (FAC, Exhibit D) The Bloom Work accurately reports how Bloom used the Infringing Work in 2000 – he read it

---

[10] Tyson also denies participating in creation of The Bloom Work. (Tyson Answer, ¶ 33)

5

aloud to his team to inspire them. (FAC, Exhibit G) Bloom reprinted slightly less than a page of what he now knows was Bell's 68-page book. Bloom's use of the Infringing Work is "fair use" as defined by 17 U.S.C. § 107 and is not copyright infringement.

"Fair use" of a copyrighted work is use without permission of the copyright owner that nonetheless does not trespass on any of the copyright owner's exclusive statutory rights. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 434, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Fair use is not infringement. *Id.* The fair use doctrine is "designed primarily to balance the exclusive rights of a copyright holder with the public's interest in dissemination of information . . ." *Straus v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620, 642 (S.D.Tex. 2007) (citing *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206 (2d Cir. 1979))

> Factors to be considered in determining fair use include:
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use on the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Judgment may be entered for Bloom on the basis of the fair use defense due to the undisputedly *de minimis* use of the Infringing Work in the context of the Bloom Work. As Bell noted in his correspondence with Tyson, the Infringing Work is less than a page of his 68-page book. (FAC, Exhibit D, p. 10) It is also less than a page of Bloom's 240-page book. To determine if the infringing work falls below the quantitative threshold of substantial similarity,

Doc# 2460743\1

courts look to the amount of the copyrighted work that was copied, as suggested by 17 U.S.C. § 107(3), as well as the substantiality of use of the copyrighted work in the infringing work. *Straus*, 484 F.Supp.2d at 639. The Infringing Work is a minimal aspect of the Bell book and it is also a minimal aspect of the Bloom Work when considered as a whole. Bell does not claim that any other part of the Bloom Work infringes his copyright.

The four enumerated fair use factors are illustrative, not limitative, and they are intended to provide the courts and the public with general guidance about the sorts of copying that courts and Congress most commonly find to be fair uses. *Campbell et al. v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). "[C]riticism, comment, news reporting, teaching ... scholarship, or research" are examples of what might constitute fair use. 17 U.S.C. § 107. Fair use is "designed primarily to balance the exclusive rights of a copyright holder with the public's interest in dissemination of information affecting areas of universal concern, such as art, science, and industry." *Straus*, 484 at 642.

The Bloom Work is reporting, teaching, and scholarship. It is accurate – in 2000, before he had heard of Bell, Bloom read to his team a document that he had received from Tyson. Bloom recounted that event accurately in his book about the 2000 season, and he reprinted in its entirety the document he read to his team – an excerpt that constitutes less than 1/68th of Bell's original work. Bloom could not have completely recounted the events of the 2000 season without including the Infringing Work. To be accurate, he had to mention that he had received his copy from Tyson.

The circumstances surrounding the alleged infringement mandate a determination of fair use. The Court may take into account the fact that Bloom included the Infringing Work in his book, believing he had permission to do so from Tyson; and without knowing that what he – and

7

Tyson -- assumed to be true in 2000 about his right to use the Infringing Work was subject to challenge in 2004. Bloom had no knowledge of the dispute between Bell and Tyson when he used the Infringing Work to exhort his team, and Bell does not plead to the contrary. It is unreasonable for Bell to posit now that Tyson must have informed Bloom of the dispute. Bell knew in 2001 that other coaches had access to the Infringing Work, and he knew that Tyson had declined to take any action to recall copies of the Infringing Work from the public or to correct misattribution. In fact, in his allegations in this lawsuit, Bell affirmatively asserts that he was satisfied with Tyson's promise not to copy or distribute in the future and refrained from filing suit without requiring further remedial measures to counteract the prior distribution to other coaches and other teams. (FAC ¶ 80)

Bell's unwarranted conclusion of fact is that Bloom obtained Tyson's permission and knowingly infringed. That conclusion is unsupported by any facts he has pled. Moreover, even if Bloom had obtained Tyson's permission after 2001 – which he did not -- Bloom's *de minimis* use still would be fair use. Judgment on the pleadings therefore is appropriate. Bloom did not infringe. Because there is no direct infringement, there can be no contributory infringement. *Sony Corp. v. Universal City Studios,* 464 U.S. 417, 434, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) Bell's copyright infringement and contributory infringement claims against Bloom must be dismissed.

### B. Federal and Common Law Unfair Competition (Counts VI and VII)

Bell's Lanham Act unfair competition claim is precluded by the most recent United States Supreme Court ruling on the interplay between the Copyright Act and the Lanham Act, *Dastar Corporation v. Twentieth Century Fox Film Corp. et al.,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). *Dastar* establishes that the Lanham Act, which was not enacted to protect inventions or ideas, should not be misused to police areas traditionally reserved for patent

and copyright law. *Id*. at 34. Due to space limitations, Bloom will not present separate arguments on this issue but adopts herein the arguments presented in Tyson's Motion For Judgment On The Pleadings, filed simultaneously herewith. Like the Lanham Act claim against Tyson, the Lanham Act claim against Bloom must be dismissed on the basis of *Dastar*.

Bell's allegation of common law unfair competition repeats the earlier allegations against Bloom. (FAC ¶¶ 77-78.) It is preempted by the Copyright Act. 17 U.S.C. § 301(a) provides:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in the works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified in sections 102 and 103 . . . are governed exclusively by this title. Therefore, no person is entitled to any such right or equivalent right in any such work under the common laws or statutes of any State.

Due to space limitations, Bloom will not present separate arguments on this issue but adopts herein the arguments presented in Tyson's Motion For Judgment On The Pleadings, filed simultaneously herewith. If the "subject matter" in dispute is material appropriate for protection under the Copyright Act, and the act of reproduction, distribution, or display forms the basis of the cause of action, then the "right" asserted is equivalent to a § 106 right, and the claims are preempted. *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990). The unfair competition claim is pre-empted and must be dismissed.

## CONCLUSION AND PRAYER

For all of the foregoing reasons, Defendant Marc Bloom is entitled to and respectfully requests judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), dismissing all counts of the First Amended Complaint as they pertain to Bloom and entering judgment in his favor and against Plaintiff Keith F. Bell. As the prevailing party, Bloom will submit a motion pursuant to

9

Doc# 2460743\1

17 U.S.C. § 505 and this Court's local rule CV-7 to recover his reasonable costs, including attorney fees incurred in defense of this matter.

DATED: <u>December 10, 2007</u>     By _____
FRITZ, BYRNE, HEAD & HARRISON, LLP
Dale L. Roberts
98 San Jacinto Boulevard, Suite 2000
Austin, TX 78701
Telephone: (512) 322-4745
Facsimile: (512)-477-5267

LINDQUIST & VENNUM P.L.L.P.
Bruce H. Little MN Reg. No. #17421X
(*pro hac vice*)
Minneapolis, MN 55402
Telephone: (612) 371-3211
Facsimile: (612) 371-3207

**ATTORNEYS FOR DEFENDANT
MARC BLOOM**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2007, true and correct copies of the following documents were served on all counsel by electronic mail by delivery of notice of electronic filing:

Randolph Houston
Fortkort & Houston P.C.
9442 N. Capital of Texas Highway, Suite 500
Austin, TX 78759

_____
Dale L. Roberts

10

Doc# 2460743\1